IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. DON WOODY MCGOWAN

**Direct Appeal from the Circuit Court for Marion County
No. 5250    Thomas W. Graham, Judge**

_____

**No. M2002-00542-CCA-R3-CD - Filed January 29, 2003**

_____

The Defendant was indicted for driving on a revoked license, driving on a revoked license second offense, evading arrest, and reckless driving. After the State presented its proof at trial, the trial court entered judgments of acquittal for the charges of evading arrest and reckless driving. At the conclusion of the trial, a Marion County jury convicted the Defendant of driving on a revoked license and assessed a fine of $500. The Defendant waived a jury as to the second offense driving on a revoked license, and the trial court found him guilty. The trial court sentenced the Defendant to eleven months and twenty-nine days for second offense driving on a revoked license and ordered that the sentence be served on probation except for thirty days to be served in the county jail. The Defendant now appeals, arguing that the trial court erred by admitting into evidence a Tennessee Department of Safety driving record as proof of the Defendant's prior conviction for driving on a revoked license. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Philip A. Condra, District Public Defender, Jasper, Tennessee, for the appellant, Don Woody McGowan.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Sherry Gouger, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. FACTUAL BACKGROUND

Chief Jim Nunley of the Whitwell Police Department testified that around 12:30 p.m. on April 12, 2000, he, Officer Easterly, and several other police officers were at the residence of Butch

Pickett. He recalled that he was on a small porch attached to Pickett's trailer when he saw the Defendant, whom he had known for ten years, drive down the road in a green Dodge pickup truck. Nunley could not recall if the truck was speeding, and he stated that the truck was not moving erratically. According to Nunley, there was a female passenger in the truck with the Defendant. Nunley testified that Easterly made a comment, immediately got into his car, and drove towards the Defendant. Nunley testified that he heard a siren a couple of minutes later. He stated that the Defendant was later arrested some distance away from Pickett's residence. Nunley reported that he received a dispatch, went to the scene where the Defendant had been arrested, and saw the Defendant in the backseat of Easterly's patrol car. He stated that the truck that the Defendant had been driving was also at the scene.

Officer Rodney Easterly of the Marion County Sheriff's Department testified that on April 12, 2000, he was at Butch Pickett's residence. Easterly stated that he was standing in Pickett's yard when he saw the Defendant and a female passenger drive by in a green Dodge pickup truck. Easterly testified that he knew that the Defendant's driver's license was revoked at the time. He recalled that he made a comment that he had seen the Defendant, immediately got into his patrol car, and followed the Defendant. Easterly testified that shortly after leaving Pickett's home, he turned on his siren and blue lights. Easterly testified that it appeared that the Defendant was trying to get away from him. He reported that he located the Defendant approximately half a mile from the Pickett residence. The Defendant was out of his car and near a house when Easterly arrived.

Easterly testified that he requested a Department of Safety Certification as to the Defendant's driving privileges. Easterly reviewed the document in court, and he testified that the document indicated that the Defendant's driver's license had been revoked. The document was then entered into evidence as an exhibit.

The jury convicted the Defendant of driving on a revoked license. The Defendant waived a jury trial as to the charge of driving on a revoked license, second offense, and agreed that the trial court would determine his guilt or innocence of that offense. The prosecution submitted a certified copy of the Defendant's driving record. Over objection by the defense, the trial court allowed the driving record to be admitted into evidence as a business record. The trial court stated that the printout seemed "trustworthy . . . in that people who are . . . keeping these records have no incentive not to properly keep the records." According to the trial court, the driving record indicated that in July 1997, the Defendant was convicted of driving on a suspended license in Georgia. Based on the driving record, the trial court convicted the Defendant of driving on a revoked license, second offense.

## II. ANALYSIS

The Defendant argues that the trial court, as the trier of fact, erred by considering certain information in the Defendant's Tennessee driving record as evidence beyond a reasonable doubt that the Defendant had previously been convicted of driving on a suspended license in Georgia. This evidence was the basis upon which the trial court convicted the Defendant of second offense driving

on a revoked license in this case after the jury convicted the Defendant of driving on a revoked license.

The admission of evidence is a matter within the trial court's discretion, and a decision to admit or exclude evidence will not be disturbed on appeal absent a clear abuse of that discretion. State v. Carroll, 36 S.W.3d 854, 867 (Tenn. Crim. App. 1999). As to the issue of the admissibility of driving records kept by the Tennessee Department of Safety, this Court has previously ruled as follows:

> We conclude that such a driving record is admissible as substantive evidence under the public records hearsay exception, see Tenn. R. Evid. 803(8), and may be introduced at any point prior to the close of the offering party's proof either by simply offering the document as an exhibit if the document contains no other objectionable material or, if the document does contain objectionable material, by reading the relevant and unobjectionable portions of the document into evidence. In either case, an authenticating witness is unnecessary. See Tenn. R. Evid. 902(5).

> Tennessee Code Annotated § 55-50-204 requires the Tennessee Department of Safety to maintain records of certain driving license information, including the revocation or suspension of licenses. See Tenn. Code Ann. § 55- 50-204 . . . .

> . . . .

> Although hearsay, such a document clearly falls within the public records exception and is, therefore, admissible as substantive evidence. See Tenn. R. Evid. 803(8); State v. Baker, 842 S.W.2d 261, 264 (Tenn. Crim. App. 1992).

State v. Donnie Ray Sisk, No. 01C01-9803-CC-00143, 1999 Tenn. Crim. App. LEXIS 463, at **3-5 (Tenn. Crim. App., Nashville, May 12, 1999).

We conclude that the trial court properly admitted the printout of the Defendant's driving record. As in Sisk, the printout in this case contained a "considerable amount of information." Id. at * 4. The driving record included the Defendant's name, address, birth date, driver's license number, issue and expiration dates, and classification. The document also indicated the Defendant's driving status as revoked. Finally, the document bore a red stamp and certification by the person appointed by the Commissioner of the Tennessee Department of Safety as Keeper of the Official Driver Records. Thus, the printout of the driving record was properly admitted in this case as evidence, and the record contained a notation that could reasonably be construed as indicating that the Defendant had been convicted of driving on a suspended license in the state of Georgia in 1997.

We agree with the trial court's finding that the driving record of the Defendant, kept by the Tennessee Department of Safety, including that portion of the record that notes a prior conviction in Georgia for driving on a suspended license, was admissible evidence. Questions concerning the weight and value of this evidence are resolved by the trier of fact. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). In this case, on this issue, the trier of fact was the trial court. The trial court

determined that the evidence of the Defendant's prior conviction was sufficient beyond a reasonable doubt and thus convicted the Defendant of second offense driving on a revoked license. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE